UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| United States of America, | ) | Criminal No.: 4:17-cr-00866-RBH |
| | ) | |
| v. | ) | **ORDER ON MOTIONS IN LIMINE** |
| | ) | |
| Brandon Michael Council, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

This capital case is before the Court on the parties' motions in limine. *See* ECF Nos. 529, 530, 531, 532, 550, 551, 600, & 638. The parties filed their respective responses to each motion. *See* ECF Nos. 629, 630, 640, & 648. The Court heard the motions on August 14, 2019, took them under advisement, and now issues the following rulings.

## **Discussion**[1]

**I.    Defendant's Motions in Limine (ECF Nos. 529, 530, 531, & 532)**

**A.    "Motion *in Limine* (Bank Video Images)"** (ECF No. 529)

Defendant argues that the Government should be limited to playing a single, continuous, linear, realtime, and unmodified video of the robbery and killings, and that the video should be played for the jury only one time during the guilt phase and not repeated in the potential penalty phase or during jury deliberations. The Government has provided a CD exhibit of the video clips it intends to play, which

---

[1]    The Federal Rules of Evidence govern the admissibility of evidence during the guilt phase. Should the trial reach a penalty phase/sentencing hearing, the governing standard is section 3593(c) of the Federal Death Penalty Act ("FDPA"). *See* 18 U.S.C. § 3593(c) ("At the sentencing hearing, information may be presented as to any matter relevant to the sentence, including any mitigating or aggravating factor permitted or required to be considered under section 3592. . . . The defendant may present any information relevant to a mitigating factor. The government may present any information relevant to an aggravating factor for which notice has been provided under subsection (a). Information is admissible regardless of its admissibility under the rules governing admission of evidence at criminal trials except that information may be excluded if its probative value is outweighed by the danger of creating unfair prejudice, confusing the issues, or misleading the jury."). The Court applies these separate standards where necessary in addressing the instant motions.

the Court has reviewed.

The Court will deny this motion. Regarding the guilt phase, the video clips (from the bank surveillance cameras) are obviously relevant to proving the crimes alleged by the Government, and their probative value is not substantially outweighed by the danger of unfair prejudice. *See* Fed. R. Evid. 401, 402, & 403. Regarding the potential penalty phase, the clips are relevant to the sentence and proof of the Government's aggravating factors, and their probative value is not outweighed by the danger of creating unfair prejudice, confusing the issues, or misleading the jury. *See* 18 U.S.C. § 3593(c). The clips at issue are markedly different from the video described in *United States v. Con-ui*, 2017 WL 783437, at *2–6 (M.D. Pa. Mar. 1, 2017) (limiting admission of a video depicting "the infliction of over 200 stab wounds, kicks to the head, and other acts of violence"), a case on which Defendant relies. The video clips may be used during presentation of the Government's evidence and during closing arguments in the guilt phase and potential penalty phase.[2] As with all evidence, the jury will have full access to the video clips during its deliberations. *However, the digital files on the CD exhibit(s) that will actually be admitted at trial should not be named/described and should simply be identified by the respective exhibit number* (e.g., "GX 95a, GX 95b," etc.). Accordingly, the Court **DENIES** this motion.

**B.** **"Motions in Limine (Video and Photographic Images)"** (ECF No. 530)

Defendant challenges the admission of the Government's Exhibits 21, 22, 23, and 70, which are photographs of Donna Major's body. Defendant argues that the Government should be limited to using only one of the photographs in Exhibits 21, 22, or 23, and he seeks exclusion of Exhibit 70.

The Court will deny this motion. Regarding the guilt phase, all four photographs are obviously

---

[2] "It bears note that the FDPA speaks in terms of 'information' rather than 'evidence' and expressly provides that the rules of evidence do not generally apply to capital sentencing proceedings. . . . [The Court] use[s] the word 'evidence' here colloquially." *United States v. Runyon*, 707 F.3d 475, 487 n.1 (4th Cir. 2013).

relevant to proving Counts One and Two, and their probative value is not substantially outweighed by the danger of unfair prejudice or needlessly presenting cumulative evidence. *See* Fed. R. Evid. 401, 402, & 403. Regarding the potential penalty phase, the clips are relevant to the sentence and proof of the Government's aggravating factors, and their probative value is not outweighed by the danger of creating unfair prejudice, confusing the issues, or misleading the jury. *See* 18 U.S.C. § 3593(c). Accordingly, the Court **DENIES** this motion.

### C. "Motion *in Limine* to Exclude Government's Proposed Exhibit Numbers 55, 60, 61, 62, & 68" (ECF No. 531)

Defendant seeks exclusion of the Government's Exhibits 55, 60, 61, 62, and 68. Exhibit 55 is a photograph of a page in Donna Major's journal; Exhibits 60, 61, and 62 are photographs of Katie Skeen's credenza; and Exhibit 68 is a photograph of a wristband on Katie Skeen's wrist.

The Court will grant this motion in part and deny it in part. Regarding the guilt phase, none of the photographs are relevant and are therefore inadmissible. *See* Fed. R. Evid. 401 & 402. Regarding the potential penalty phase, however, the photographs are relevant to the sentence and proof of the Government's aggravating factors, and their probative value is not outweighed by the danger of creating unfair prejudice, confusing the issues, or misleading the jury. *See* 18 U.S.C. § 3593(c). Accordingly, the Court **GRANTS** this motion as to the guilt phase and **DENIES** this motion as to the potential penalty phase.

### D. "Motion *in Limine* to Exclude Prejudicial and Irrelevant Evidence of Films Found in His Possession" (ECF No. 532)

Defendant seeks exclusion of the Government's Exhibits 152, 153, 154, and 155, which are evidence of the films/movies found in his possession during the search of his car. Exhibit 152 is an

3

overhead photograph of multiple different DVD cases with titles of different movies, a spindle of DVDs, a liquor bottle, and an open duffle bag; Exhibit 153 is a closeup photograph of the spines showing the titles of all the DVD cases; Exhibit 154 is the physical DVDs themselves; and Exhibit 155 is a photograph of the single DVD *Get Rich or Die Tryin'* and a DVD player/remote. Defendant's motion mainly focuses on the film *Get Rich or Die Tryin'*.[3]

The Court will exclude Exhibits 152, 153, and 154 from both the guilt and potential penalty phases because (1) assuming they are relevant in the guilt phase, their probative value is substantially outweighed by the danger of unfair prejudice, *see* Fed. R. Evid. 403; and (2) as to the potential penalty phase, their probative value is outweighed by the danger of creating unfair prejudice, confusing the issues, or misleading the jury. *See* 18 U.S.C. § 3593(c).

However, Exhibit 155—the photo of just the single DVD *Get Rich or Die Tryin'*—is relevant because it corroborates Defendant's reference to *Get Rich or Die Tryin'* during his statements to law enforcement and shows the film was in his possession when he was arrested. Exhibit 155 is admissible in the guilt phase because of its relevance and because its probative value is not substantially outweighed by the danger of unfair prejudice. *See* Fed. R. Evid. 401, 402, & 403.

Moreover, Exhibit 155 is admissible in any potential penalty phase because it is relevant to the sentence and proof of the Government's aggravating factors, and its probative value is not outweighed by the danger of creating unfair prejudice, confusing the issues, or misleading the jury. *See* 18 U.S.C. § 3593(c). The Government explains its evidence will show that Defendant "routinely watched" *Get Rich or Die Tryin'* and that he watched this film "within 24 hours after his crimes." ECF No. 630 at

---

[3] Defendant contends the only reference to *Get Rich or Die Tryin'* should be that made in his statements to FBI agents. ECF No. 532 at p. 4 n.1.

pp. 15, 18. As the Government correctly argues, such evidence is relevant to the aggravating factors of pecuniary gain (trying to survive by robbing proceeds from a bank, as Defendant explained in his statements to FBI agents) and lack of remorse (watching the movie after the alleged killings). *Id.* at p. 18; *see* 18 U.S.C. § 3593(c) ("The government may present any information relevant to an aggravating factor for which notice has been provided . . . .").

The Court will not allow any testimony by the case agent or others describing what the film is about or other theories.[4] The case and DVD itself (from Exhibit 154) are not admissible because the jury will have a photo of the DVD; and the Court does not want to risk it being played by the jury in the jury room. While a witness may testify that Defendant watched films, they should not reference the title of any film other than *Get Rich or Die Tryin'*.

Accordingly, the Court **GRANTS** this motion in part and **DENIES** it in part.

**II.     Government's Motions in Limine**

    **A.     "First Omnibus Guilt Phase Motion *in Limine*"** (ECF No. 550)

The Government argues (1) Defendant should be precluded from referencing legal authority beyond that expressly delineated in the Court's jury instructions; and (2) Defendant should not be allowed to define reasonable doubt, should be precluded from discussing or telegraphing his mitigation case during the jury selection process or the guilt phase, and should be precluded from encouraging nullification on the issue of punishment. The Government also seeks admission of summary charts/exhibits for the guilt phase.

First, the Court notes it generally does not define the term "reasonable doubt." *See United States*

---

[4] Specifically, the Government cannot present argument or elicit testimony comparing Defendant to the protagonist from *Get Rich or Die Tryin'* or analogizing his actions to those in the film.

*v. Williams*, 152 F.3d 294, 298 (4th Cir. 1998) ("[A] district court need not, and in fact should not, define the term "reasonable doubt" even upon request."); *United States v. Lighty*, 616 F.3d 321, 380 (4th Cir. 2010) (same). Likewise, counsel should not attempt to define reasonable doubt. *See United States v. Patterson*, 150 F.3d 382, 389 (4th Cir. 1998) ("[A] district court may restrict counsel from arguing definitions of reasonable doubt.").

Second, the Court will not permit any "stakeout" questions during the jury selection process. *See generally Richmond v. Polk*, 375 F.3d 309, 316 (4th Cir. 2004) (explaining "stakeout" questions are "aimed at determining what prospective jurors would do if presented with a certain state of evidence"; and explaining "*Morgan*[5] does not require that a capital defendant be allowed to determine at voir dire what a prospective juror's sentencing decision will be if presented with a specific state of evidence or circumstances"); *United States v. Caro*, 597 F.3d 608, 615–16 (4th Cir. 2010) ("*Morgan* does not require crime-specific voir dire questions.").

Finally, the Court notes other issues raised in the Government's motion appear premature.[6] Should those issues actually arise during trial, the parties will have the opportunity to make a contemporaneous objection for the Court's consideration.[7]

Accordingly, the Court **GRANTS** this motion in part (regarding reasonable doubt and stakeout questions) and **RESERVES** ruling on the remaining issues should they arise.

---

[5] *Morgan v. Illinois*, 504 U.S. 719 (1992).

[6] At the August 14 hearing, the Government's counsel indicated it was uncertain whether summary charts would be used at trial.

[7] It goes without saying that efforts for jury nullification are inappropriate. *See United States v. Muse*, 83 F.3d 672, 677 (4th Cir. 1996) ("Although a jury is entitled to acquit on any ground, a defendant is not entitled to inform the jury that it can acquit him on grounds other than the facts in evidence, i.e. a jury has the power of nullification but defense counsel is not entitled to urge the jury to exercise this power." (internal footnote omitted)).

**B.     "First Omnibus Penalty Phase Motion *in Limine*"** (ECF No. 551)

This motion presents a variety of issues, and the Court will first address the Government's request regarding victim impact evidence. *See generally Payne v. Tennessee*, 501 U.S. 808 (1991) (permitting victim impact evidence during capital sentencing). Should the trial reach a penalty phase, the Government proposes to call no more than eleven victim impact witnesses—whose testimony will last from thirty minutes to an hour (on the "low-end" per the Government) and up to two hours (on the "high-end" per the Government)—and to present no more than four to five exhibits per witness. The Court finds this proposed presentation reasonable[8] and therefore grants the Government's request to the extent that the Government abides by the description given at the August 14 hearing.[9]

Next, the Government contends Defendant should not be allowed to argue jurors are never required to impose death. Based on defense counsel's representations at the August 14 hearing, it appears defense counsel has a proper understanding of this issue and a definitive ruling by the Court is unnecessary. Generally speaking, a jury is not required to impose a death sentence *before* weighing the aggravating and mitigating factors; however, "once the death penalty has been found justified because aggravating factors sufficiently outweigh mitigating factors, the death penalty must be imposed." *Caro*, 597 F.3d at 632; *see Lighty*, 616 F.3d at 367 ("[U]nder *Caro*, once the jury concludes

---

[8]     *See* ECF No. 551 at p. 22 (listing cases giving the number of witnesses who provided victim impact testimony).

[9]     The Government acknowledges in its brief that it is aware of the limitations on victim impact testimony. *See* ECF No. 551 at p. 20 n.4 (citing *Booth v. Maryland*, 482 U.S. 496 (1987), *overruled on other grounds by Payne*). *See generally Lighty*, 616 F.3d at 361 (explaining "the portion of the holding in *Booth*[—]prohibiting family members of a victim from stating characterizations and opinions about the crime, the defendant, and the appropriate sentence during the penalty phase of a capital trial[—]survived the Supreme Court's decision in *Payne*"). Additionally, contrary to Defendant's argument, the Government's proposed witnesses (family members and friends/coworkers) are proper under *Payne* and *United States v. Runyon*, 707 F.3d 475, 500 (4th Cir. 2013) ("[W]e see no reason to think that the *Payne* Court intended to forbid the introduction of evidence regarding the impact of the victim's death on his friends and colleagues as well as his family.").

7

a death sentence is justified under [18 U.S.C.] § 3591, it must impose the death penalty.").

Third, the Court will allow Defendant to introduce evidence (in the potential penalty phase) of his *offer* to plead guilty because—as Defendant argues—it is relevant to his acceptance of responsibility.[10] *See, e.g.*, *United States v. Fell*, 372 F. Supp. 2d 773, 784 (D. Vt. 2005) (excluding the defendant's proposed plea agreement but admitting the defendant's offer to plead guilty).

Fourth, the Government argues Defendant should not be permitted to allocute before the jury during the potential penalty phase, arguing such an allocution would not be subject to cross-examination and would thus deny the jury the essential information necessary to make a credibility determination. Defendant asserts he has not indicated whether he will request to allocute, but asserts the Court should permit him to do so if he does. The Court finds this issue is premature, but generally notes "the decision of whether to allow the allocution [is] within the district court's discretion." *Caro*, 597 F.3d at 635 n.24.

Fifth, the Government asserts Defendant's witnesses should not be allowed to give their opinion on the appropriate sentence. Defendant asserts he does not intend to elicit such testimony. Thus, this issue is moot.

Sixth, the Government argues Defendant's witnesses should not be allowed to give their opinion about Defendant's possible future contributions. Defendant opposes this argument. The Court finds this issue is premature, but notes such testimony (which is unknown at this point) could be admissible *if* it properly bears on Defendant's character. *See* 18 U.S.C. § 3592(a)(8) (contemplating mitigating factors to include the defendant's "character"). The Court would have to hear such proffered testimony

---

[10]  Defendant represents that he only plans to introduce the fact that a plea offer was made to the Government and that he will not seek to introduce the proffer letter he sent the Government. *Cf. Caro*, 597 F.3d at 634 (upholding exclusion of the defendant's written *letter* "to the government offering to plead guilty").

before being able to make a ruling.[11]

Seventh, the Government argues Defendant should be precluded from presenting execution impact evidence, *i.e.*, how third parties would be affected if he were sentenced to death and executed. The Court agrees such testimony is improper. *See United States v. Hager*, 721 F.3d 167, 194 (4th Cir. 2013) ("[A]llowing a capital defendant to argue execution impact as a mitigator is improper."); *id.* at 195 ("The capital defendant is available to offer the jury all relevant information as to his life, background, character, and the impact any sentence will have on him. To allow testimony of the impact on third parties, however, does nothing to inform the jury on any of these matters and upsets the balance set forth in *Payne*.")

Finally, the Government asserts Defendant should not be allowed to present evidence of his potential future conditions of confinement or evidence of comparative proportionality review. Defendant indicates he does not plan to introduce this type of evidence, and therefore the Government's request is moot.

Accordingly, the Court **GRANTS IN PART AND DENIES IN PART** this motion.[12]

**C.     "Penalty Phase Motion *in Limine* to Exclude Certain Opinions of Dr. Susan McCarter"** (ECF No. 600)

Originally, the Government moved to exclude certain opinions of Defendant's expert Dr. Susan

---

[11]     The example given by the Government—the uncle's testimony in *Lighty*—was case-specific. *See* 616 F.3d at 363–64 (upholding exclusion of uncle's testimony—"whether he believed Lighty would have a positive impact on those in jail"—because it "called for no more than rank speculation about how Lighty would adjust to life in prison").

[12]     The Government also argues the Court should prevent Defendant's witnesses from testifying about the impact his background (including any trauma he suffered) had on his behavior. *See* ECF No. 551 at pp. 4–6. This argument/issue was more fully developed in the Government's motions regarding Dr. Susan McCarter and Deborah Taylor Grey, which were discussed at the August 14 hearing and are addressed below.

McCarter—who will testify in any potential penalty phase generally about juvenile justice and North Carolina's juvenile justice history—because Defendant did not give notice of expert evidence of a mental condition pursuant to Fed. R. Crim. P. 12.2(b). *However, at the August 14 hearing, defense counsel explained he would have Dr. McCarter say she is not offering any mental health diagnosis of Defendant.*[13] This testimony regarding the North Carolina juvenile justice system is being offered to show Defendant's background and the environment he was exposed to by the population in the juvenile justice system, and it is not mental health evidence of Defendant. Defense counsel further stated he would have Dr. McCarter say she is not offering any diagnosis of mental disease or defect of Defendant. Based on defense counsel's representations, the Government indicated it could not find anything objectionable about Dr. McCarter. Thus, the Court finds this motion is moot and/or resolved by agreement.

D. **"Penalty Phase Motion *in Limine* to Exclude Certain Opinions of Deborah Taylor Grey"** (ECF No. 638)

The Government moves to exclude certain opinions of Defendant's expert Deborah Taylor Grey—a licensed clinical social worker who will testify in any potential penalty phase about Defendant's biopsychosocial history—arguing that her testimony is mental health testimony, that she is not qualified to serve as a mental health expert, and otherwise that her testimony would fall under Rule 12.2 procedures (the deadline which has since passed). The Government further argues that if the Court admits Ms. Grey's opinions, it should be permitted to examine Defendant so as to prepare a

---

[13] The Court interprets defense counsel's representation as meaning the defense will affirmatively elicit testimony from Dr. McCarter that she is *not* offering an opinion that Defendant has "a mental disease or defect or any other mental condition" within the meaning of Fed. R. Crim. P. 12.2(b) (the rule governing "expert evidence of a mental condition").

10

rebuttal mental health case under Rule 12.2(c). *However, at the August 14 hearing, defense counsel stated Ms. Grey is not going to testify that Defendant suffers from mental illness, disease, defect, or cognitive difficulty*, explaining her biopsychosocial history stops at the end of Defendant's developmental period (ages 24 or 25).

The Court will deny the Government's motion. Ms. Grey's disclosure specifies she will describe Defendant's biopsychosocial history during his developmental period, the basic requirements of healthy human development, the potential significance of certain adverse childhood experiences, and risk factors in Defendant's formative development. In essence, according to Ms. Grey's disclosure and defense counsel's representations at the August 14 hearing, Ms. Grey's testimony will bear on Defendant's background and the risk factors that existed during his developmental period. Ms. Grey's proposed testimony falls within the parameters of typical biopsychosocial testimony, is not "expert evidence of a mental condition" contemplated by Fed. R. Crim. P. 12.2(b), and thus does not warrant a rebuttal examination under Rule 12.2(c). *See generally Basham v. United States*, 109 F. Supp. 3d 753, 811 n.36 (D.S.C. 2013) (explaining "a biopsychosocial assessment [is a] family background history assessment"); *see, e.g.*, *Mahdi v. Stirling*, 2018 WL 4566565, at *20–22, 31 (D.S.C. Sept. 24, 2018) (example of biopsychosocial assessment). Accordingly, the Court **DENIES** this motion.[14]

## Conclusion

For the foregoing reasons, the Court:

(1) **DENIES** ECF No. 529;

---

[14] The Court interprets defense counsel's representation as meaning the defense will affirmatively elicit testimony from Ms. Grey that she is *not* offering an opinion that Defendant has "a mental disease or defect or any other mental condition" within the meaning of Fed. R. Crim. P. 12.2(b) (the rule governing "expert evidence of a mental condition").

11

(2) **DENIES** ECF No. 530;

(3) **GRANTS IN PART AND DENIES IN PART** ECF No. 531;

(4) **GRANTS IN PART AND DENIES IN PART** ECF No. 532;

(5) **GRANTS IN PART AND RESERVES RULING IN PART** as to ECF No. 550;

(6) **GRANTS IN PART AND DENIES IN PART** ECF No. 551;

(7) **FINDS AS MOOT** ECF No. 600; and

(8) **DENIES** ECF No. 638.

**IT IS SO ORDERED.**

Florence, South Carolina  
August 21, 2019

<u>s/ R. Bryan Harwell</u>  
R. Bryan Harwell  
Chief United States District Judge